MCCARTY *et al.* v. CHALFANT *et al.*

(Absent, JOHNSON, JUDGE.)

Decided December 21, 1878.

1. A deed of trust, *bona fide* made, may be for future advances by the *cestui que trust*, as well as for present debts and liabilities, and it will be valid between the parties and against subsequent purchasers (after the advances were made) with constructive or actual notice of the deed of trust, not only as to the indebtedness at the execution of the trust, but also subsequent advancements made by the *cestui que trust* on faith of the deed of trust subsequent to the execution of the trust-deed, to the extent of the amount specified in the deed of trust.

2. An account stated or settled may be pleaded and set up in bar in an answer to a bill for an account.

3. Generally, exceptions to reports of master commissioners partake of the nature of special demurrers; and if the report is erroneous, the party complaining of the report or excepting thereto must point out the error in his exceptions with reasonable certainty, so as to direct the mind of the court to it. When he does so, the parts not excepted to are admitted to be correct, not only as regards the principles, but as relates to the evidence on which they are founded.

4. But a commissioner's report, if erroneous on its face, may be objected to on the hearing of the cause, though no exception be previously filed; and also in the Appellate Court, though no exception appears to have been taken in the court below; but without such exception, it cannot be impeached by adult parties on grounds and in relation to subjects which may be affected by extraneous testimony.

Appeal from and *supersedeas* to a decree of the circuit

court of Harrison county, rendered on the 25th day of June, 1875, in a cause in said court then pending, wherein Cam. P. McCarty and Elam Pigott were plaintiffs, and S. H. Chalfant and John Chalfant were defendants, allowed on petition of said John Chalfant.

Hon. C. S. Lewis, late judge of the second judicial circuit rendered the decree appealed from.

The facts of the case fully appear in the opinion of the Court.

*T. W. Harrison and C. Boggess,* for appellant, relied on the following authorities:

5 W. Va. 50; 6 W. Va. 153; 9 Gratt. 294; 9 Gratt. 309; 7 Cranch 34; 23 How. 14; 3 Bro. C. 39 l.

*Maxwell and Goff,* for appellee, cited the following authorities:

6 W. Va. 165; 5 W. Va. 50; 9 Gratt. 304.

HAYMOND, JUDGE, delivered the opinion of the Court:

The plaintiffs complain, that prior to the 25th day of May, 1869, the plaintiff Cam. P. McCarty, a merchant then doing business in Harrison county, had various dealings with the defendant, John Chalfant, purchasing from said John Chalfant a stock of merchandise, and said John Chalfant purchased from said McCarty various articles, and received from said McCarty various sums of money, and collected from other persons at different times money due said McCarty, there being for some time preceding said 25th day of May, 1869, continued mutual dealings between said John Chalfant and said plaintiff, McCarty; that said McCarty having full confidence in the honor, integrity and good faith of said John Chalfant, permitted him to keep the accounts to a great extent of said mutual dealings, permitting the said Chalfant to collect the money of said Chalfant from different persons indebted to said McCarty, and to receive from said McCarty on many and various occasions money and arti-

cles of value to be credited and accounted for as money, without receipting to McCarty for the same, the said Chalfant promising to give McCarty credit therefor and to keep a fair, honest and correct account of the same, and of said mutual dealings and indebtedness. That on the said 25th day of May, 1869, the said dealings between McCarty and defendant, John Chalfant, not then being fully settled, McCarty was then induced to believe by said Chalfant's representations, that McCarty was then still largely indebted to said Chalfant on account of said mutual dealings; and McCarty, not being fully advised as to the true condition and standing of said accounts, and thinking that he was then indebted to said Chalfant in some sum not then ascertained, and being desirous to secure said Chalfant the payment of any sum he might be indebted to him, he (McCarty) at the request of said Chalfant executed and delivered to said Chalfant his note for $3,000.00 on the 25th day of May, 1869, payable in three years from date, and to secure the same he (McCarty) on the same day conveyed to defendant, Solomon H. Chalfant in trust, two tracts of land lying on Cunningham's run, in said county of Harrison, and authorized said trustee to sell said two tracts of land, on the terms mentioned in said deed, in case of the non-payment by McCarty of said note for $3,000.00. That said trust deed was duly recorded in the recorder's office of Harrison county, an official copy of which is filed with the bill as Exhibit No. 1. Plaintiff McCarty, avers that it was, at the time said note and trust deed were executed, fully understood and agreed by and between said McCarty and John Chalfant, that said McCarty was to secure all that might then be due him from McCarty on account of said dealings; and that it was also understood that the amount of said indebtedness was not then ascertained and had not been determined, but was to be in a short time calculated and ascertained from the books, accounts, memoranda and information in the possession of said John Chalfant and said plaintiff, McCarty, and

when so ascertained the sum was to be paid by McCarty to said John Chalfant—the said note and deed of trust to be security for the same; and when McCarty should pay off said indebtedness, the said John Chalfant was to deliver up to McCarty said $3,000.00 note, and to release said deed of trust.

McCarty also avers, that after he so executed the said deed of trust and note, he at different times paid said Chalfant various sums of money on account of said indebtedness, the said Chalfant always neglecting to inform him of the amount of the balance due him on said accounts, and to furnish him (McCarty) a statement of them, as he was to have done—said Chalfant on several occasions remarking that he had not been able to find certain papers, notes and accounts, so as to enable him to perfect said settlement; that he, (McCarty) continued, when requested by said Chalfant, and when assured by him that he (McCarty) was still indebted to said Chalfant, to pay him at different times sums of money (the amounts and mode of payment, and dates of same were entered, or pretended to be entered, by said Chalfant in his account books) on account of his said debt, and in liquidation of said note and in discharge of said deed of trust; that said John Chalfant afterwards, about June, 1871, informed said McCarty, that he (Chalfant) had calculated the said indebtedness, and that after allowing McCarty credit for his payments and counter claims, the indebtedness of him, McCarty, to said John Chalfant was paid off and discharged.

That said Chalfant informed McCarty on several occasions, and remarked in the hearing of several persons, that McCarty had paid him, Chalfant, all his debt, and that he would give him up his said note for $3,000.00, and release said deed of trust, as said debt was discharged, or words to that effect; that McCarty trusting in the promises of said John Chalfant for the time being put himself to no trouble, and felt no uneasiness, about said transactions, believing the same to be settled, and thinking that

said John Chalfant would soon release said deed of trust.

That affairs remained in this condition some time, when McCarty, desiring to dispose of said land, rented and afterwards sold said tracts of land embraced in said deed of trust to plaintiff, Elam F. Pigott, who took possession of the same. That said John Chalfant has been for several years endeavoring to purchase said lands of McCarty, and made various and repeated offers for the same; but McCarty, not deeming said offers advantageous to himself, declined to sell said land to said Chalfant at a much less sum than he could obtain from others for it; that he (McCarty) incurred the displeasure of the said John Chalfant, who much to the surprise of McCarty (and long after he, said Chalfant, had informed McCarty and others, that the debt coming to him from McCarty had been fully paid and discharged) informed him, that he, Chalfant, intended to sell said tracts of land under said deed of trust, in order to pay off the balance due him on said $3,000.00 note, and that he, Chalfant, intended to buy said land, when it should be sold.

That at the time when said John Chalfant would talk about said transactions with said McCarty, no one being present, he, Chalfant, would admit that the said debt was all paid, and that no balance in fact was coming to him on said debt from McCarty, but would inform McCarty that he, McCarty, had no proof of it, he, Chalfant, holding all the papers, and having the note unsatisfied and the deed of trust unreleased in his possession, and would insist, that said McCarty should sell and convey to him (Chalfant) said land in fee, he offering to pay McCarty for the same but not as much as said land was worth, nor as much as McCarty had been offered for it, said Chalfant endeavoring to scare and coerce said McCarty into a sale and sacrifice of said land to him, McCarty not then being in condition to sell said land to said Chalfant, had he been disposed so to do, having previously bargained with said Pigott for the sale thereof to him. But when said Chalfant would talk with McCarty about

said transaction, other parties being present, said Chalfant would, much to the surprise, mortification and disgust of McCarty (who now discovered that his confidence had been misplaced, and that he, in whose integrity and purity of purpose he had placed the most implicit confidence, was endeavoring to defraud him of his hard earned pittance by taking advantage of the trust, which had been reposed in him) claim that said note was unpaid, that the full amount with interest was due him, and that he would sell the land in order to pay said debt, said McCarty being under the impression that said Chalfant was by such conduct endeavoring to force him to sell to him, Chalfant, said land; but that McCarty, not intimidated by the conduct or threats of Chalfant, declined to sell him said land, and sold it to said Pigott, thinking that said Chalfant would not insist upon pursuing the course he had threatened, and that if he should contrary to justice and equity insist on so doing, that he would be restrained from carrying into effect so great an outrage upon the rights of McCarty.

That said Pigott under the sale to him has been in possession of said land since about the 6th day of April, 1873; and McCarty and wife made to said Pigott a deed for said land, which was duly recorded in the clerk's office of the county court of Harrison county, an official copy of which is filed as Exhibit No. 2.

That said John Chalfant, though he well knows that said McCarty is not indebted to him on account of said note or said deed of trust, and well aware that the same has been paid in full, as he, Chalfant has frequently admitted, has nevertheless caused the said Solomon H. Chalfant (a son of said John, and the trustee named in said deed of trust) to advertise said land embraced therein for sale, for the purpose, as stated in the notice of sale, of satisfying said note of $3,000.00; that the sale is advertised by said trustee to take place at Hessville in said county of Harrison Feb. 21, 1874, on the terms and conditions set forth in said trust deed. Plaintiffs file

with their bill what they allege to be a copy of said notice of sale.

Plaintiffs charge, that every cent, that was owing to the said John Chalfant from said McCarty, for which said $3,000.00 note was executed, and to secure which said deed of trust was executed, by virtue of which said trustee is now threatening to sell &c., has been paid to the said John Chalfant; and that nothing is now coming to said Chalfant on the same; and that plaintiffs can show, by a true and proper settlement of the accounts between said John Chalfant and McCarty and by the repeated admissions of said John Chalfant made at the time of the adjustment, or last payments, made by said McCarty on said accounts, that all said indebtedness has been paid in full, and that said land now owned by said Pigott should not be sold for the purpose set forth by said trustee in his notice of sale, nor for any other purpose.

The bill then prays that said trustee be enjoined and restrained from selling said two tracts of land described in said deed of trust, and that said John Chalfant be restrained from proceeding further to collect or enforce the said note for $3,000.00, until further order of the court &c.; that said John Chalfant be required to answer &c., and be required to produce and file said $3,000.00 note, and, should it be necessary, that there be an order of reference to ascertain the true and just condition of the accounts between the said McCarty and the said John Chalfant, and whether or not the indebtedness of the said McCarty to said John Chalfant has not long since been paid in full, and if not, what amount of the same remains unpaid &c., and, the premises considered, that the court will pass a decree settling and adjudicating the rights of the parties, entering up satisfaction of the said $3,000.00 note, or decreeing what amount of the same remains unpaid, if any, cancelling the said deed of trust and executing a release of the same, and such order or decree as will protect the right of said plaintiffs, in the premises, and perpetually restraining the said Solomon H. Chal-

fant or the said John Chalfant from selling the said land under said deed of trust, or enforcing the collection of said note by any means. The bill then prays for general relief &c. The bill is verified by the affidavit of said McCarty.

An injunction was granted as prayed in the bill by the judge of the circuit court on the 9th of February, 1874.

The deed from McCarty and wife to said Pigott, is dated 31st of January, 1874, and appears to have been admitted to record on the 9th day of February, 1874.

The defendant, John Chalfant, filed his answer to plaintiff's bill, in which he says it is true, that prior to the 25th day of May, 1869, the said McCarty purchased from him various bills of merchandise, and perhaps a horse, and he got a few articles from him (McCarty) and some money; the whole amount of cash and other articles being about $600.00. He says he did not collect from any one else money due McCarty. He also says, that he did keep an account of all dealings between them correctly and honestly, giving McCarty credit for everything he was entitled to be credited with, and on the 25th day of May, 1869, the said McCarty being largely indebted to him, and wishing credit for additional merchandise and other articles, was importunate with him (Chalfant) therefor. That he deeming it unsafe to further trust McCarty in the manner he had been doing, determined not to sell him further, until he would do something to secure him (Chalfant) for what he already owed him, and for what he might let him have in addition thereto; and thereupon, under these circumstances, it was agreed between them, that said McCarty should execute said note and give the deed of trust of same date, which was done on the 25th day of May, 1869; and it was then and there agreed, that a settlement of their accounts should be made, and the said note, if in excess of what McCarty should owe him when such settlement was made, should be credited with such excess, and the

trust stand as security for what remained unpaid, which residue McCarty was to pay as soon as he could. That McCarty did, after the date of said note and trust, purchase from him various bills of merchandise amounting to about $2,600.00, before the settlement, which was agreed to be made, was made, and did occasionally pay several sums of money on account of the merchandise purchased, amounting to about $1,000.00, all of which were duly entered on the account books of him (Chalfant).

He denies that he remarked to McCarty several times, that he could not make said settlement, because he was unable to find certain papers, notes and accounts. He also denies, that about June, 1871, he informed McCarty that he had calculated said indebtedness, and that the same was paid off and discharged, and says that he never did so inform McCarty, or make a remark to that effect in the presence of any person whatever; and he also denies, that said indebtedness has been paid by said McCarty, or any person for him. He also denies, that said McCarty believed said indebtedness was settled, or the amount thereof paid; for on the 25th day of December, 1873, he says McCarty came to see him, and said then he wanted to pay it off, and he (Chalfant) proposed then and there to receive the same from him, and would gladly have received it, but as soon as he (Chalfant) manifested a desire to receive it, McCarty made some excuse, and went off without paying a cent. He denies, that he ever wished to buy said land from McCarty, or that he ever made an offer for it. He says it is true, that he told McCarty he intended to sell said tracts of land under said trust, and that he (Chalfant) intended to make the land bring its worth and full value when sold. He denies, that in conversations with McCarty, no one else being present, he ever admitted that said debts were all paid, but that he (McCarty) had no proof of it, and that therefore McCarty should sell the land to him. He says, all such charges in the bill are absolutely false. He says, it is true that he always claimed, other parties being present, that the

said debt was not paid, because the same was not paid, and he always claimed that said debt was not paid. He also states, that upon many occasions after the said 25th day of May, 1869, he let McCarty have goods and merchandise on credit "until early in March of the year 1872, when believing that he ought to settle up his accounts, he called upon him to do so. Accordingly on the 22d day of March, 1872, the said McCarty and he (Chalfant) had a full, complete, fair and honest settlement of all accounts then between them, in which said McCarty was credited with all his payments and other items of credit of any kind whatever; and he (McCarty) was then found indebted to him (Chalfant) in the sum of $2,700.00. This was a full and fair settlement made on the part of the said McCarty, with his books or accounts present, and on the part of respondent, by his son Solomon Chalfant, with respondent's books and accounts present.

"Both parties were then satisfied with said settlement; and respondent believes there was no error in it. McCarty was so well satisfied with it, that he then and there made a memorandum to that effect in writing, acknowledging that he then owed $2,700.00 to S. H. Chalfant. The said S. H. Chalfant was then acting for respondent; and said indebtedness was really due to respondent. The said McCarty has not paid to respondent, or to the said Solomon H. Chalfant, one cent in money or anything else, since he executed the said last mentioned note; and on the day on which the land was advertised to be sold under the said trust, the said last mentioned note, with the interest which respondent was lawfully entitled to receive on the same, exceeded the said sum of $3,000.00. Besides that the expenses of said trust are to be added. And it is this debt which the said trust was given to secure."

He alleges, that Pigott had notice of said deed of trust before he bought said land. He also states, that the allegation in the bill, that he well knows that he, McCarty, is not indebted to him on account of said note for

$3,000.00, is false as hereinbefore shown. He also says, he has always claimed that the said deed of trust is a just and proper security for the amount said McCarty justly owes him for goods, merchandise and chattels, which is evidenced by the note given to the said Solomon for $2,700.00. That said note, with its lawful interest and the expenses of executing the said trust, is all the money he (Chalfant) claims of the said McCarty by virtue of the notes for $3,000.00 and $2,700.00, and the said deed of trust. He however says, that McCarty owes him a small bill for goods purchased since the 22d day of March, 1872. He says, he filed with his answer the said $3,000.00 note and the said $2,700.00 note. He also says, it is true that he caused said land to be advertised for sale under said trust, but shortly after the notices of sale were put up, and before this suit was brought or injunction granted, and without knowledge that it would be applied for or granted, believing that the time fixed for the sale was not so good as a later day in the spring would be, when more persons are usually looking for land to buy, recalled said notices of sale ; but he insists, that he has the right to sell the same under said trust to pay said debt. He prays, that the injunction be dissolved and bill dismissed, &c. This answer is verified by the affidavit of said John Chalfant.

The defendant, S. H. Chalfant, also filed his answer to the bill, in which he states, that he is the son of said John Chalfant, and as such has transacted much of his mercantile business for him, both in selling goods and settling his accounts for the said John, and that it is true, as stated in the bill, that the said McCarty bought goods of his father prior to the execution of the said deed of trust ; that he also paid him, the said John, some money, but he (S. H. Chalfant) does not know of his own knowledge any thing concerning the execution of the said deed of trust, or the agreement made at that time between the said McCarty and the said John, but that he has been informed by his father of the nature of the said agreement,

and believes it to be correctly stated in the answer of said John Chalfant. . He also says, that after the 25th day of May, 1869, McCarty dealt with his father in the way of purchasing goods from him to a considerable amount, and did pay some money upon his indebtedness, and for said payment he received full and exact credit on his account. That said dealings on the part of said McCarty continued "without adjustment until the 22d March, 1872, when this respondent at the instance of his father, the said John Chalfant, made a settlement with the said Cam. P. McCarty of the accounts existing between them up to that time; the said McCarty was present with his accounts and this respondent was present with the accounts of his father, and they then and there made a full and fair settlement of their accounts; and it was found, that the said McCarty owed the said John Chalfant $2,700.00, and he then and there executed to this respondent his due bill for the said sum. The execution of the due bill to this respondent instead of the said John Chalfant was inadvertent, probably occasioned by the, fact of this respondent making the settlement, but the said sum of $2,700.00 was in fact for the indebtedness of the said Cam. P. McCarty to the said John Chalfant, which the deed of trust and note of the 25th of May, 1869, were intended to secure" and that no part of said $2,700.00 "due bill" of the 22d of March, 1872, has been paid by said McCarty or any one else. This answer is also verified by the affidavit of said S. H. Chalfant.

The said $3,000.00 note does not appear in the record before us; but according to the deed of trust it bore equal date with the deed of trust and was payable three years after date, nothing being said about interest. Said $2,700.00 note or due bill does appear in the record and is as follows:

"PROSPECT VALLEY, WEST VA., March 22, 1872.

"*Know all men by these presents*, That we, Cam. P. McCarty and S. H. Chalfant, this day made a settlement,

and left the amount due S. H. Chalfant $2,700.00 the day and year above written. .

"C. P. McCARTY."

Depositions were taken by the plaintiffs and the defendant, John Chalfant, and filed. It appears that at rules on the first Monday in May, 1874, the plaintiffs filed general replications to said answers. And at a circuit court held for said county of Harrison on the 12th day of December, 1874, the cause came on to be heard on the bill, answers, replications thereto, depositions and exhibits; and the court adjudged, ordered and decreed, that the cause be referred to a commissioner thereof to settle the accounts of all the dealings between the parties referred to in the bill and answers; that he ascertain and report any special matter or said accounts in any special manner either party should require; that he also ascertain what amount was due from the plaintiff, Cam. P. McCarty, to John Chalfant at the time of the execution of the trust referred to in the bill in this cause.

Afterwards on the 25th day of June, 1875, it appears that the cause came on to be heard upon the papers theretofore read, proceedings had therein, the report of commissioner Roane filed in the cause, and exceptions to said report; and the court adjudged, ordered and decreed, that the defendants' exceptions taken to the report of commissioner Roane be overruled, and the injunction theretofore granted in this cause be permanently perpetuated; that the defendants, Solomon Chalfant and John Chalfant, be forever inhibited and restrained from selling the land, in the bill mentioned, under the deed of trust of May 25, 1869; and that the plaintiffs recover of the defendant, John Chalfant, their costs by them in the prosecution of this suit expended.

From and to this last named decree the defendant, John Chalfant, obtained from one of the judges of this Court, in vacation, upon his petition and assignment of error, an appeal and *supersedeas*; and thus this cause has been brought before us for review and decision.

1878
Special Term.

McCarty et al.
v.
Chalfant et al.

The said defendant, John Chalfant, has assigned in his petition the following as errors in the said decree, for which it should be reversed, viz: " 1. That the court should have held, that the settlement made by the parties, and note given by McCarty, 22d day of March 1872, concluded the plaintiffs in the cause.    2. That the court erred in not sustaining your petitioner's exceptions to said report."   The defendant, Chalfant, has also filed an additional assignment of error, which is as follows: " That an issue should have been directed to try whether there had been a settlement made between the said Mc-Carty and Chalfant on the 22d day of March, 1872, and a balance ascertained."

The commissioner in his report, on which the court acted in its final decree, reported in his first statement therein, that on the 25th day of May, 1869, the date of said deed of trust, there was in fact a balance due from said John Chalfant of $78.99 to said McCarty, and in his statement of accounts, table B, that on the 22d day of March, 1872, the date of said alleged settlement, there was in fact due from said John Chalfant to said McCarty the sum of $237.71.   This report professes to be based on the accounts of the parties, composed of numerous items produced before him, and the evidence in the cause.

The defendants filed the following exceptions to said report, viz: "1. Because in the first statement of the accounts the commissioner reports John Chalfant indebted to McCarty $78.99.    2. Because in table B, the commissioner reports John Chalfant indebted to McCarty $352.71, and because it reopens a settled account." These are all the exceptions filed to said report.

The commissioner in his said table B, does say, that on the 22d day of March, 1872, John Chalfant was indebted to McCarty in the sum of $352.71; but he afterwards deducts therefrom $115.00, on account of the Hildreth debt, which, as he ascertains, leaves a balance

due McCarty from John Chalfant, on the 22d day of March, 1872, of $237.71.

I will now proceed to consider the defendant John Chalfant's assignments of error, and will for the sake of convenience and brevity consider somewhat together the first and last, or third, assignments of error.

The first question to be ascertained in considering these assignments of error is, whether the said note for $3.000.00 payable three years after date and the said deed of trust, which on its face was executed to secure the payment of said $3,000.00 note, and which were made on the 25th day of May, 1869, were executed solely for the purpose of securing John Chalfant whatever McCarty then owed him, if anything, or whether they were made to secure said Chalfant for both what McCarty then was indebted to him, if anything, upon account and for what he might afterwards become indebted to said Chalfant in their dealings or business.

It is admitted by all parties, that McCarty was not indebted to said John Chalfant in the sum of $3,000.00 at the date of the deed of trust and note; and to my mind it is quite clear, that neither John Chalfant nor McCarty supposed or believed at the execution of said note and deed of trust, that McCarty was indebted to said Chalfant in the sum of $3,000.00 by a large amount.   They at that time had made no settlement of their accounts and dealings; and it is quite probable, that neither of them at the time had correct knowledge of the true state of their accounts, although it is not unlikely that McCarty at the time supposed and believed, that he was indebted to said Chalfant much less than he, Chalfant, supposed or believed. John Chalfant deposes positively, that the said note and deed of trust were made to secure and cover McCarty's then indebtedness to him, whatever it was, and also his future indebtedness in their dealings upon settlement, and that such was the agreement and understanding between him and McCarty; and I do not understand McCarty to swear positively to the contrary, he says: "It

might have been before the time that the deed was written, that there was some such talk, but I never agreed to it, that I know of; I don't recollect that we did, or did not, agree to any such transactions; if we ever did I don't recollect it."

McCarty continued making purchases of goods largely of Chalfant after the deed of trust as before; and it is evident, that he purchased more afterwards than he did before. Without entering further into particulars upon this point, from the evidence and circumstances as well as the acts of both parties at the time and afterwards it seems to me, that said note and deed of trust were made by McCarty to secure not only the amount, if anything, he then was indebted to John Chalfant upon their mutual accounts against each other, but also whatever amount McCarty should afterwards become indebted to said John Chalfant in their dealings upon settlement of their mutual accounts; and that such future settlement in some form was contemplated by the parties. Under these circumstances is the deed of trust valid for the said purposes of its execution?

In the case of *Shirras et al.* v. *Caig et al.*, 7 Cranch 34, it was held, that "it is not necessary to the validity of a mortgage, that it should truly state the debt it is intended to secure; but it shall stand as a security for the real equitable claims of the mortagee, whether they existed at the date of the mortgage, or arose afterwards upon the faith of the mortgage before notice of the defendant's equity."

In the case of *Lawrence* v. *Tucker*, 23 How. 14, it was held, that "where a mortgage was given to secure the payment of a note for $5,500.00, and such advances as then had been made, or might be made within two years, not to exceed in all an indebtment of $6,000.00, and advances were made, the mortgage was good to cover the advances and the note for $5,500.00. The parties to the transaction so understood it, and acted upon it accordingly. In respect to the validity of mortgages for existing

debts and future advances there can be no doubt. This court has made three decisions directly and inferentially in support of them."

Justice Wayne, who delivered the opinion of the court in the last named case, at p. 26, says: "An objection of this kind was made in the case of *Shirras* v. *Caig*, 7 Cranch 34; but this court then said, it is true the real transaction does not appear on the face of the mortgage; the deed purports to have been a debt of £30,000.00, *due to all of the mortgagees*. It was really intended to have different sums due at the time to particular mortgagees, advances afterwards to be made, and liabilities to be encountered to an uncertain amount. After remarking that such misrepresentations of a transaction are liable to suspicion, Chief Justice Marshall adds: 'But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation.' In this case, the complainant has not been deceived, and the variance between the alleged indebtedness and that advances were to be made afterwards gives to this suit no additional forces in equity." See *United States* v. *Hooe*, 3 Cranch 73; *Conrad* v. *The Atlantic Insurnnce Company*, 1 Pet. 448; opinion of Tilghman, C. J. in *Lyle* v. *Ducomb*, 5 Binn. 590.

In the last named case, Tilghman C. J., says: "There cannot be a more fair, *bona fide*, and valuable consideration than the drawing or endorsing of notes at a future period, for the benefit and at the request of the mortgageors; and nothing is more reasonable than the providing a sufficient indemnity beforehand."

Justice Story declared, in *Leeds* v. *Cameron*, 3 Sumn. 492, that nothing can be more clear, both upon principle and authority, than that at the common law a mortgage,

*bona fide* made, may be for future advances by the mortgagee, as well as for present debts and liabilities.

In the case of *The Bank of Utica* v. *Finch et al.*, 3 Barb. Ch. 293, it was held, that "a mortgage, or a judgment may be given to secure future advances, or as a general security for balances which shall be due, from time to time, from the mortgageor or judgment debtor. And this security for future advances may be taken in the form of a mortgage, or judgment, for a specific sum of money, sufficiently large to cover the amount of the floating debt to be secured thereby."

In no case, however, can the holder of a mortgage enlarge his demand, by reason of it to an amount beyond that which appears upon the record. *St. Andrew's Church* v. *Tompkins*, 7 Johns. Ch. 14.

Under the authorities above cited it seems to me, that a deed of trust, *bona fide* made, may be for future advances by the *cestui que trust* as well as for present debts and liabilities, and it will be valid between the parties and against subsequent purchasers, after the advances are made, with constructive or actual notice of the deed of trust, not only as to the indebtedness at the execution of the trust, but also subsequent advancements made by the *cestui que trust* on faith of the deed of trust, subsequent to the execution of the trust to the extent of the amount named in the trust. Perhaps as against a subsequent purchaser the deed of trust should be held good to cover any advancements made by the *cestui que trust* before notice of the purchase; but I do not decide that question, as it does not arise here, the entire indebtedness claimed in the case having been increased prior to the sale to Pigott. It cannot be said under the evidence, that the plaintiff, Pigott, has been injured or deceived by the deed of trust and note in this case given for the purpose affirmed.

As we have seen, the answer in this case states there was "a full, complete, fair and honest settlement of all accounts between McCarty and John Chalfant, on the

Syllabus 2.

22d day of March, 1872, in which said McCarty was credited with all his payments and other items of credit of any kind whatever, and he, McCarty, was then found in arrear to John Chalfant in the sum of $2,700.00," &c. It is now contended, that this alleged settlement concluded the plaintiffs in this cause. In order to a proper understanding upon this subject it is proper to recur to the rules and law therein.

Story in his work on Eq. Plea. §798, says, "(2) A plea of a stated account. (3) A plea of a settled account. These pleas may be conveniently considered together as for the most part they depend upon the same considerations. A stated account properly exists, only when accounts have been examined, and the balance admitted as the true balance between the parties, without having been paid. When the balance thus admitted is paid, the account is deemed a settled account. Each of these, and a fortiori a settled account, may be pleaded in bar to a bill for an account. But the defendant, who pleads a stated account, must show, that it was in writing and the balance likewise in writing, or at least it must set forth, what the balance was, and that the settlement was final." In Cooper's Eq. Plea. 277. And in Mitford's Chancery 320, it is said: "A plea of a stated account is a good bar to a bill for an account." See also 1 Story Eq. Jur. §523. In Adams' Eq., at top page 485, side page 227, it is said: "If therefore there has been an account stated between the parties, it may be pleaded as a bar to both discovery and relief, or may be set up by answer as a bar to relief." See also Endo v. Coleham, 1 You. 306.

In the case of McNeel v. Baker et al. 6 W. Va., 163, it was held, that "Upon a general bill for an account a defendant may set up in his answer, as a bar or defense, a stated or settled account; and if upon issue joined upon the answer it is found to be true, the court may give leave to the plaintiff to amend his bill and to surcharge and falsify the stated or settled account by pointing out or indicating specifically any items of error, mistake or omission existing therein."

Mr. Story in his Eq. Plea., §800, says: "Courts of equity will not open a settled account, when it has been signed, or a security taken on the foot of it, unless for fraud, or for errors distinctly specified in the bill and supported by evidence." See also Cooper Eq. Plea. 278. Again at § 801 Mr. Story says: " When fraud has appeared in a stated account, it has been opened after a considerable lapse of time," &c. Again at §802 Mr. Story says: "In the frame of a plea of a stated or settled account to a bill charging error or fraud, it is necessary to meet these charges by averments in the body of the plea, and also to support the plea by an answer denying them. And if neither error nor fraud is charged, the defendant must by his plea aver, that the stated or settled account is just and true to the best of his knowledge and belief. If the bill charges that the plaintiff has no counterpart of the account, the account should be annexed by way of schedule to the answer, so that, if there are any errors upon the face of it, the plaintiff may have an opportunity of pointing them out. As the delivering up of vouchers is an affirmation that the account between the parties was a settled one, if this has taken place at the time the account was stated, it seems to constitute the proper subject of an averment in a plea of that nature." See also Cooper's Eq. Plea. 279, 280 ; Mitford's Ch. 259, 260.

In the case at bar neither the defendant, John Chalfant, nor the said S. H. Chalfant, trustee, in their answers expressly plead, or rely upon, an account stated or settled with McCarty in bar to the plaintiff's bill for an account ; and it is not clear that they or either of them can be said to do so by implication, if that were sufficient. But taking it for granted that it is competent to plead and set up an account stated, or settled, in bar by answer, which the authorities authorize, and waiving all objections of a technical character as to the manner in which it is pleaded in this case, what does the plea in this case amount to ? I answer, that by the most liberal interpretation it cannot and does not amount to more than a

plea of an account stated between the defendant, John Chalfant, by his agent, S. H. Chalfant, and McCarty. If there was an account stated as alleged, it was incumbent on the said John Chalfant to satisfactorily prove the fact. How should this proof have been made? It should ordinarily be made by the production of the account stated and proof of it, or in the case of its loss or destruction, by proof that such account stated was made and by proof of its contents. It is not pretended here that the settlement was merely verbal, and a balance due ascertained by verbal settlement, or that the parties by agreement jumped their accounts and thus ascertained and agreed upon a balance, if this would be sufficient, which I do not now decide.

The answer of John McCarty says, that McCarty and said John Chalfant, by his son and agent Solomon Chalfant, on the 22d day of March, 1872, had a full, complete, fair and honest settlement of all accounts then between them, in which McCarty was credited with all his payments and other items of credit of any kind whatever; and he McCarty, was then found indebted to said John Chalfant in the sum of $2,700.00. It also states, that McCarty had his books or accounts present, and on the part of John Chalfant by his said son, with John Chalfant's books and accounts present; that both parties were then satisfied with said settlement, and he John Chalfant, believes there was no error therein; that McCarty was so well satisfied, that he then and there made a memorandum to that effect in writing, acknowledging that he then owed $2,700.00 to S. H. Chalfant; that the said S. H. Chalfant was then acting for said John Chalfant and that said indebtedness was really due him (John Chalfant); that said McCarty has not paid him, nor said S. H. Chalfant, one cent on said note, &c. The answer does not even aver that the alleged settlement or account stated was *final*.

Now if there was an account stated between the said McCarty and John Chalfant, where is it, and what the

proof of it? McCarty on his oath in his deposition denies any such account stated, or settled as alleged. The evidence shows that McCarty was a drinking man and not unfrequently drunk, and it seems that on the day of the alleged settlement he got from said S. H. Chalfant a bottle of spirits and got drunk upon it; that he believes that the signature to said memorandum is his, but he has no recollection of signing it.

John Chalfant took and filed his deposition in the cause before the decree of reference in which he says, I had a settlement with McCarty; he owed me $2,700.00, there were several dollars over that amount, but when we took the note we just threw off to $2,700.00; we took that as a settlement, and an agreement upon the settlement to go on the deed of trust. I saw him sign the $2,700.00 note filed with my answer in this cause. He wrote me from the west, that he did not want me to sell the land while he was absent; he was then at Holden, Mo. This letter was written about two years ago.

It may reasonably be inferred from the answer of John Chalfant that he was not present when the alleged settlement was made; but he states in his deposition that he was present. He does not however state how the settlement was made, and produces no account stated of any kind, nor does he produce his books or anything whatever in connection with his deposition showing or tending to show a settlement or account stated of any kind. In fact he produces and shows nothing except the said memorandum, or note as he calls it, filed with his answer, which on its face tends to show a settlement with S. H. Chalfant, and a balance due him, and not a settlement with John H. Chalfant. The said memorandum is not signed by S. H. Chalfant. Strange to say, the said John Chalfant did not take and file the deposition of said S. H. Chalfant before the decree of reference was made in the cause; but he does attempt to prove by himself and son-in-law, Bartlett, that on the 1st of January, 1874, McCarty stated that $2,700.00, with its interest was just

the amount he owed him (John Chalfant); but on examining the whole evidence upon what did occur and was said there on that day, it seems to me that said John Chalfant has failed in this respect.

McCarty in his deposition taken before the decree of reference says substantially: "I have paid to Chalfant altogether since the execution of that note, meaning the $3,000.00 note, up to the time referred to by the witnesses, Robey and Mitling, I think in the neighborhood of $3,600.00; it may be a little over, or it may be a little under. The amount was paid in money, produce and notes on other persons. Mr. Chalfant and myself talked over the matter about the middle of June last (meaning June 1873, after the time of the alleged settlement) and I claimed, and Mr. Chalfant admitted, that there was then due from me to Mr. Chalfant the sum of $295.00 balance on all the dealings between Mr. Chalfant and myself up to that time, out of which I was to be allowed a credit for keeping a lot of cattle for Mr. Chalfant, which I estimated to be worth about $180.00." He also says, that if Chalfant had paid the Joe Hildreth claim at the 22d day of March, 1872, then he owed Chalfant the amount of it less the pay for keeping the cattle; but if Chalfant did not pay the Hildreth claim until after that time, then I did not owe him anything. He also testifies: " I was tight that evening (meaning the evening of the 22d of March, 1872.) I recollect of going over there (meaning to Chalfant's store) but do not recollect of going home; if I executed the $2,700.00 note, I was too drunk to recollect it; I think I got German bitters that morning from Solomon H. Chalfant, on which I got drunk."

John Chalfant says, that the settlement was made in the evening and night of the 22d day of March, 1872. James Robey, whose deposition was taken and filed by plaintiffs before the decree of reference, says: "It was about six or seven months ago (meaning in the year 1873 his deposition being taken in May, 1874) I think,

that I heard Mr. Cam. P. McCarty ask Mr. John Chalfant, if he claimed that deed of trust; Chalfant in reply said he did not; and also Mr. McCarty asked Mr. Chalfant, if $295.00 was not all he claimed, and he, Chalfant, said it was; and Mr. McCarty asked him, Chalfant, if he had paid him for keeping some cattle, and Chalfant said he had not, but would pay. This conversation might have been longer than six or seven months ago." He states, that this conversation occurred at McCarty's shop, and that Benjamin Robey and Jacob Miltong were with him, and that McCarty is his uncle, &c.

Plaintiffs also took and filed, before the decree of reference, the deposition of Jacob Miltong in which he states substantially, that "he heard McCarty ask John Chalfant, if it was not about $295.00 that he owed him, and he, Chalfant, said, yes it was about that much; this was about June last year (meaning 1873), as well as I remember, about the time of corn hoeing; in the same conversation McCarty asked him, Chalfant, if he claimed the deed of trust, to which Chalfant replied, no, no I don't claim the deed of trust, it aint just." He further states that "in the conversation I referred to before, McCarty remarked that the keeping of the cattle had not been paid for and Chalfant said that must come out of the $295.00." He also states that Benj. Robey and Ab. Robey were with him at the time.

John Chalfant testifies that McCarty was not drunk at the time of the alleged settlement of March 22, 1872. It may be remarked, that if said John Chalfant and his son S. H. Chalfant were both present at the time of said alleged settlement and an account stated had been made in any manner and the balance of $2,700.00 agreed upon, it is somewhat singular that the said "note," as it is called, for $2,700.00 should have been written in the form it was, representing a settlement between S. H. Chalfant and McCarty, and that there was due S. H. Chalfant, $2,700.00. This is not only singular, but as a settlement, or stated account, between McCarty and

John Chalfant of their mutual accounts is denied by McCarty. It becomes more than simply singular, when no such settlement or account stated or memorandum thereof of any kind other than said $2,700.00 "note" is produced, and the failure to produce the same is unaccounted for. It is but reasonable, that if a settlement had been made, or an account stated of any kind, that there should have been some memorandum made of it, or entry of it in some intelligible form appearing on the books of said Chalfant; but the books produced before the commissioner indicate nothing of the kind. John Chalfant does not produce the letter he says McCarty wrote him from Missouri, or account for his failure to do so.

After the decree of reference had been made, and while the cause was before the commissioner, the defendant, John Chalfant, took the deposition of said Solomon H. Chalfant, who testified before the commissioner, that he entered on the account book of John Chalfant charges for all articles bought by McCarty on credit, and credited him with all articles of produce, notes and money delivered and paid by him; that he made a settlement with McCarty of all these accounts after the 25th day of May, 1869; that the settlement embraced all the dealings up to the time the settlement was made; that on said settlement there was $2,700.00 and something over due John Chalfant; that McCarty stated, when the settlement was made, that he had not done very well, and asked him if he wouldn't throw off the odd dollars, which he did; and left the amount $2,700.00; that the settlement was closed by due bill; that the due bill filed with the answer of the defendant, John Chalfant, dated the 22d day of March, 1872, is the paper given by McCarty to him at the time; that McCarty wrote his name to it, and that McCarty was sober at the time; that McCarty said he was satisfied with the account; that it was right.

He also states that McCarty, John Chalfant and himself were the only persons present, when said settlement was made; that the settlement was made at his father's storehouse at night and was finished late.

He also swears, that the amount of McCarty's account on the 25th day of May, 1869, was $3,175.34, and that McCarty was entitled to credit thereon $616.97; that the balance due said John Chalfant on the 25th day of May, 1869, was $2,558.37. These words then appear in S. H. Chalfant's deposition: "(The book here filed marked B. contains the said accounts except a small portion which is brought forward from another book)" and the witness is then asked, "are these accounts correctly kept, or otherwise?" And he answered: "They are correctly kept." Copies of the accounts of McCarty, both debit and credit, as contained in said account books referred to by the said S. H. Chalfant in his deposition appear to be copied in the record before us; and from said accounts as copied it appears, that the amount of John Chalfant's account against McCarty, on the 25th day of May, 1869, was not $1,800.00, according to my calculation, as well as that of the commissioner, which is near $1,390.00 less than Solomon H. Chalfant states; and after deducting the $616.00 credit from the amount appearing on said account book, without considering any other credits which McCarty claims, his indebtedness to John Chalfant on the said 25th day of May, 1869, was less than half of $2,558.37 the amount stated by said S. H. Chalfant in his deposition.

These errors of said S. H. Chalfant, (and they are errors, if the record before us is correct, which we must presume it to be) cannot fairly be attributed to mere accident, and as having been innocently made.

And again there is nothing appearing on the books indicating that any settlement had been made or balance struck; and taking the debits and credits as appearing upon said books, and deducting the one from the other, the balance is not $2,700.00, but is according to my calculation several hundred dollars more.

Again, William Hildreth testifies, that about May, 1869, the said Solomon H. Chalfant stated to him, that McCarty owed John Chalfant but little. Stephen S.

McCarty, as I understand his deposition, testifies that about the same time or shortly afterwards, Solomon H. Chalfant stated to him, that plaintiff, McCarty's, indebtedness to John Chalfant was small, but the amount was not stated.

Elam M. Pigott, one of the plaintiffs, testifies that in June, 1873, he saw Solomon H. Chalfant near or at the store of John Chalfant, and had a talk with him about this McCarty land ; and during that conversation he asked said Solomon how much McCarty owed when the deed of trust was given, and he answered about $600.00, &c.

It appears that McCarty also filed his book of account against said John Chalfant, and he swears it is correct, but says it does not contain all the credits to which he is entitled, that there are some credits on Chalfant's books which he has not on his. McCarty's account contained in his book against John Chalfant is much larger than the credits given him on Chalfant's books.

It is true the defendant, John Chalfant, has attempted by depositions to impeach the character of the plaintiff, McCarty, for truth and veracity upon oath. A number of depositions have been taken on both sides upon this subject; and upon considering all the evidence upon this point it seems to me, that defendant, John Chalfant, has not been successful in impeaching the character of the defendant, McCarty, for truth and veracity when on oath.

There is evidence in the cause other than the oath of McCarty, as I understand the evidence and its effect, which tends to prove that McCarty did not receive credit on Chalfant's books for all the moneys and notes to which he is entitled.

Considering all the facts and circumstances appearing in this case, together with the admissions of John Chalfant testified to by Roby and Miltong as well as defendant McCarty, my conclusion is, that a settlement of the accounts of the said John Chalfant and defendant, McCarty, was not made on the 22d day of March, 1872,

and that no account stated was made between them. This I think was substantially and rightfully decided by the circuit court, when it made the order of reference in the cause; and it seems to me, that the depositions, books, &c., filed in the cause since said decree of reference do not change the case in this respect, unless it be as against such settlement or account stated. And upon this subject I have not such doubts in my mind as to require, or make it proper, to direct an issue to be tried by a jury to ascertain whether such settlement was made on the 22d day of March, 1872.

The first exception filed by the defendants to the first statement of the accounts is too general in a case like this. That statement of the commissioner is evidently made up from a large number of items of account and evidence before him; and the exception in fact amounts to nothing more than the defendants endorsing upon the report: " We, or I, object to this statement of accounts up to the 25th day of May, 1869." This statement is manifestly made up from a number of items, vouchers, and evidence *aliunde* the statement itself, and to ascertain whether it is correct or not, the court below would have been required to have gone through all the items of account and evidence in the cause on the hunt of errors not pointed out. I do not understand the rule to require this of the court upon such vague and general exceptions in a case like this. According to my understanding of the authorities generally, exceptions to the reports of commissioners of this character partake of the nature of special demurrers; and if the report is erroneous, the party complaining of the report must put his finger on the error. When he does so, the parts not excepted to are admitted to be correct, not only as it regards the principles, but as relates to the evidence on which they are founded. *Wilkes et ux.* v. *Rogers et al.*, 6 Johns. 566, 591 top page and 592 side page; Second Revised Ed. of Barb. Ch. Pr. 552.

In the case of *Perkins* v. *Saunders et al.*, 2 H. & M.

Syllabus 3.

420, Judge Tucker in delivering the opinion of the court at p. 422, says: "I have considered it as a settled principle, that this court will not enter into an examination of accounts referred to a commissioner, and settled by him, unless an exception to them has been taken in the court of chancery, nor *then* unless the exception be so stated as that this court may decide upon the equity, or legality, of the principle only, upon which the article is admitted or rejected, without wasting their time in adjusting the *particulars* of a long and intricate account, a business which is the peculiar province of a *commissioner* and *accountant*, and which, if this court were to admit themselves to be bound to engage in, would in a year or two put a total stop to the administration of justice in civil causes in this commonwealth."

This exception is in effect but the equivalent of no exception; and I see no error on the face of the said first statement of said report.

In the case of *Hyman & Moses* v. *Smith et al.*, 10 W. Va. 298, it was held by this Court, that "a commissioner's report, if erroneous on its face, may be objected to on the hearing of the cause, though no exception be previously filed, and also in the Appellate Court, though no exception appears to have been taken in the court below; but without such exception, it cannot be impeached by adult parties on grounds and in relation to subjects which may be affected by extraneous testimony."

Syllabus 4.

For the foregoing reasons it seems to me, that the circuit court did not err in overruling the defendants' said first exception filed to the report of the commissioner.

The defendants' second exception, the first branch of which is to table B of the commissioner's report, is like the first exception too vague and general, and is justly subject to the same objections as the first; and I see no error or errors upon the face of said table B, taking it all together, which is prejudicial to the said John Chalfant; and the circuit court did not err for the reasons aforesaid in overruling the first branch of the

defendant's said exception to table B of the commission-er's report.     The second branch of defendant's said sec-ond exception to said table B of the commissioner's re-port, which is, "because it re-opens a settled account," I have already disposed of in determining that a settled account had not been established.

After giving this case a patient and laborious consid-eration, the foregoing are my conclusions and convictions therein.

For the foregoing reasons the said decree of the circuit court of the county of Harrison, rendered in this cause on the 25th day of June, 1875, must be affirmed; and the appellant, John Chalfant must pay to the appellees Cam. P. McCarty and Elam F. Pigott, $30.00 damages, and their costs about their .defense of this cause in this Court expended.

JUDGES MOORE AND GREEN CONCURRED.

DECREE AFFIRMED.