# CHARLESTOWN.

ROHRBAUGH *v.* BENNETT,

and

FISHER *v.* McNULTY.

Submitted June 15, 1887.—Decided September 23, 1887.

1. CERTIORARI—TO PERFECT APPEAL—TRANSCRIPT.

   Under some circumstances, this Court will on its own motion
   award a *certiorari*, where it affirmatively appears that important
   parts of the record have been omitted from the transcript; but as a
   general rule it will not do so, where by the failure or neglect of
   the appellant the transcript is too imperfect to show affirmatively
   the facts constituting the grounds of the errors, on which the ap-
   pellant relies in his petition for the appeal. (p. 192.)

2. VENDOR AND VENDEE—UNPAID PURCHASE MONEY.

Where a vendor, by an executory contract, sells land on credit, and places the vendee in possession, the vendee, without obtaining the legal title from his vendor, or paying all his purchase money, then sells and conveys the land by absolute deed, and collects all the purchase money due from his vendee, *held*, in a suit by the first vendee, he may subject the land to sale for the unpaid purchase money due to him, notwithstanding the second vendee has paid all he agreed to pay for the land, and received an absolute deed for it from his vendor. (p. 193.)

3. LACHES—IN PROSECUTING SUIT.

Delay and laches in the prosecution of a suit, after it has been commenced, are not generally matters of which the defendant can complain or avail himself, where the record fails to show that he made any effort in the court below to expedite the cause. (p. 194.)

*J. M. Bennett* for appellant.

*C. C. Higginbotham* for appellees.

SNYDER, JUDGE:

William W. Jackson died testate in June, 1858. Under the provisions of his will his executor, George R. Jackson, was directed to sell his real estate on credit, and make conveyances to the purchasers, reserving liens for the purchase-money until paid. On September 9, 1858, said George R. Jackson, as executor, sold to Jacob J. Jackson a lot of about five acres of land, known as the "Jackson mill property," at the price of $6,550.00. Prior to the death of the testator, William W. Jackson, he had given two trusts deeds upon said mill property to J. M. Bennett, trustee, to secure indebtedness to said Jacob J. Jackson—the first dated March 20, 1847, to secure three bonds of $1,000.00; and the other, dated December 13, 1856, to secure two bonds of $1,525.00 each. It seems to have been understood at the time of said sale to Jacob J. Jackson that the sum due on these two trust debts should be credited on the purchase-money, and that the residue should be paid in one or two years thereafter. The purchaser was put in possession of the property; but, before the contract of sale was reduced to writing, and the bonds given for the deferred payment, both the parties died. Jacob J. Jackson died testate on January 16, 1859, and by his will he appoint-

ed J. M. Bennett his executor. On January 6, 1859, George R. Jackson died intestate, and C. W. McNulty afterwards became his administrator. In 1859, soon after J. M. Bennett qualified as the executor of Jacob J. Jackson, he, under the authority of the will of his testator, sold the said mill property to C. F. Ridgeway, at the price of $6,505.00. By deed dated May 11, 1859, Bennett, as executor, conveyed the said property to Ridgeway. The latter, by deed of same date, conveyed the same to a trustee to secure to Bennett the said purchase-money. John S. Fisher, having become the administrator *de bonis non* with the will annexed of the estate of William W. Jackson, in August, 1859, instituted suit in the Circuit Court of Upshur county against said Bennett, as executor of Jacob J. Jackson, the said C. W. McNulty, as administrator of George R. Jackson, the said C. F. Ridgeway, and others, to have the sale of said mill-property, made by George R. Jackson, executor to Jacob J. Jackson, as aforesaid, confirmed, and the residue of the purchase-money due from the estate of Jacob J. Jackson paid to him, and that the same should be held to be a lien on said property in the hands of Ridgeway, plaintiff averring in his bill that said Bennett refuses to pay the said residue of purchase-money, or any part thereof, unless ordered to do so by the court. A decree was entered in this cause in April, 1860, by which it was declared that the contract of sale between George R. Jackson, executor of William W. Jackson and Jacob J. Jackson, was valid and binding; and by the same decree the cause was referred to a commissioner to report the balance due on said contract from the estate of Jacob J. Jackson to the estate of William W. Jackson.

In September, 1865, Bennett filed his answer in this suit, in which he admits that he, as executor, is liable for the $6,550, which his testator agreed to pay for said mill property, less the two trust debts before mentioned, and that he has in his hands sufficient assets to pay off whatever may be found due on the said property. On March 19, 1869, J. M. Bennett, executor as aforesaid, released the lien of the trust-deed taken by him to secure the purchase-money on said mill property to him from Ridgeway, and by deed dated July 10, 1876, Ridgeway conveyed said property, with general war-

ranty, to D. T. Farnsworth, in consideration of other real estate conveyed by Farnsworth to him. In 1873 C. W. McNulty departed this life, and then M. L. Rohrbaugh qualified as the administrator *de bonis non* of the estate of George R. Jackson, deceased. In April, 1879, said Rohrbaugh, as such administrator, brought his suit in the Circuit Court of Upshur county against J. M. Bennett, as executor of Jacob J. Jackson, John S. Fisher, administrator *de bonis non* of William W. Jackson, C. F. Ridgeway and D. T. Farnsworth. In his bill, after setting out the facts above stated, the plaintiff avers that John S. Fisher, administrator as aforesaid, refuses to further prosecute his said suit, alleging as a reason therefor that it is the duty of this plaintiff, as the administrator of George R. Jackson, to enforce the specific execution of the contract of sale of said mill property made by said George R. Jackson, as executor, with said Jacob J. Jackson, and collect the money remaining due thereon, and alleges that the balance still due on said contract is $3,181.78, with interest thereon from September 9, 1858, which he claims is a lien on the said mill property. He also alleges that his intestate as executor made advancements to the estate of William W. Jackson to an amount equal to $2,000.00, which is still unpaid. He therefore prays that Bennett, as executor of Jacob J. Jackson, be decreed to pay over to him said $3,181.78, with interest as aforesaid, and that, in default of such payment by Bennett, as executor, the said mill property may be sold to pay said sum and the costs of this suit.

In October, 1883, on the motion of the defendant, J. M. Bennett, executor, etc., an order was entered by the court, transferring both these causes to the Circuit Court of Lewis count where they were duly docketed in November, 1883. Thereupon Bennett, as executor, filed an amended answer to the bill in the first cause, and also an answer to the bill in the second cause. In both these answers respondent insists on the staleness of the plaintiff's demand, and relies on the doctrine of laches as a bar to any relief, and pleads the statute of limitations. In the latter answer he admits that he, as executor of Jacob J. Jackson, sold the mill property to Ridgeway, and collected all the purchase-money therefor, and that in December, 1868, he paid $292.88 of said money to

John S. Fisher, as administrator of William W. Jackson, which he says was at that time believed to be all that was due from his testator to the estate of said W. W. Jackson. In November, 1883, these two causes and three others were heard together, and an order made referring them to a commissioner, with directions to him to report, among other matters, what part of the purchase-money for the mill property is still due from the estate of Jacob J. Jackson; that he also report settlements of the accounts of George R. Jackson, as executor of William W. Jackson, of J. M. Bennett, as executor of Jacob J. Jackson, and of the plaintiff, Rohrbaugh, as administrator of George R. Jackson, so far as they relate to the estate of W. W. Jackson, and the balance due from the latter to the estate of George R. Jackson.

No portion of the report made by the commissioner, except that part showing an account of the payments made and balance due on the purchase of the mill property, appears in the transcript of the record brought to this Court. The balance found by the court to be due from the estate of Jacob J. Jackson to the estate of William W. Jackson is $3,508.87, as of June 16, 1884. The plaintiff Rohrbaugh and the defendant Bennett each excepted to said report. The exceptions of said defendant are merely a general denial of the right of the plaintiff to any relief, and a reliance upon the defence of laches, and the bar of the statute of limitations. These exceptions are too general, vague, and indefinite to be available for any purpose under the repeated decisions of this Court. *McCarty* v. *Chalfant*, 14 W. Va. 531; *Chapman* v. *Railroad Co.*, 18 W. Va. 185.

On October 30, 1884, the court entered a decree sustaining one of the plaintiff's exceptions to the commissioner's report in regard to a small amount of interest on one of the credits allowed the estate of Jacob J. Jackson, and overruled all the other exceptions of the plaintiff and defendant, and confirmed the report, with the exception of the small amount of interest aforesaid. After correcting the report as just indicated, and adding interest to October 30, 1884, the date of the decree, the balance due from the estate of Jacob J. Jackson to the estate of William W. Jackson on the purchase of the mill property was found and decreed to be $3,698.51 as of

said date.  Of this sum, J. M. Bennett, as executor of Jacob
J. Jackson, was ordered to pay $2,012.45 to the plaintiff,
John S. Fisher, administrator of William W. Jackson, and
said Bennett, as executor, was ordered to pay the residue of
$1,686.12 to the plaintiff, M. L Rohrbaugh, administrator of
George R. Jackson, it having been ascertained that that
sum was due from the estate of William W. Jackson to the
estate of George R. Jackson on account of advancements
made by the said George R. Jackson to the estate of said
William W. Jackson while he was executor thereof.    The
decree further directed the administrator of William W. Jack-
son to convey said mill property to the heirs of Jacob J.
Jackson, retaining a vendor's lien in the deed for said
$3,698.51.  It also directed that, unless the defendant, Bennett,
as executor, should pay the said sum and the costs of these
suits within 120 days, then a commissioner appointed for the
purpose was ordered to sell said mill property to pay said debt
and costs.    On the petition of J. M. Bennett, executor of
Jacob J. Jackson, and the defendant, D. T. Farnsworth, an
appeal with *supersedeas* was allowed them from said decree.

The appellants assign four grounds of error as follows:
"*First*, it was error to decree to the plaintiffs in excess of the
true amount of their claim, if any there were; *second*, it was
error to render a decree, without first ascertaining the avail-
able amount devised by William W. Jackson to Jacob J.
Jackson, that the same might be properly offset; *third*, it
was error to assert a vendor's lien on real estate, where no
lien was retained in the deed conveying it; and, *fourth*, it
was error to decree in favor of M. L. Rohrbaugh, administra-
tor of George R. Jackson, for advances made by him, except
as a general creditor."

The foregoing statement of the facts and proceedings in
these causes might be considered a sufficient answer to each
and all of these assignments of error.   The most of them are
irrelevant to any question presented in the record, and the
whole of them are plainly without merit and unsustained by
the law or the facts.  But, as they have been made and re-
lied upon by counsel, it may be excusable to notice each of
them specially.   It will be observed, however, that they are
a departure from any of the objections or defences made by

the appellants in the court below. The defences relied on in that court were of an entirely different nature.

1. The first assignment merely raises a question of fact to be determined by a simple calculation. I have taken the trouble to make a calculation of the plaintiff's debt upon the principles and *data* furnished by the decree and commissioner's report, and find that the amount of the debt as fixed by the decree is correct according to those principles and *data*, and therefore this assignment is wholly unsupported by the facts in the record.

2. If there was anything in the record in the court below to authorize the second assignment, the appellants have omitted to have it embraced in the transcript they have presented to this Court. It is true, the record before us shows that William W. Jackson, by his will, after charging his estate with the payment of his debts, and making a number of specific devises and legacies, provides that the one-half of the residue of his estate shall be equally divided among four named legatees, one of whom is Jacob J. Jackson. But there is nothing in the record before us to show that there is any residue of the estate, or any fact or evidence to show that, under any circumstances, said Jacob J. Jackson is, or ever will be, entitled to anything from said estate. So, if we concede that, under a different state of facts, the objection presented by this assignment would been titled to consideration, it cannot be made available, and does not arise upon the record now before us. In order to raise that question, it would be necessary to show a full settlement of the estate of said William W. Jackson, in which it appeared that there was a·residue in which Jacob J. Jackson's estate is entitled to share. Such a settlement seems to have been directed by the court; but the report, if any was made, has been omitted in the transcript before us. If there was any such settlement or report, it was the duty of the appellants to have it included in the transcript of the record, if they desire to raise objections which would involve its consideration. This Court will, in some instances, where it has clear evidence of important omissions in the transcript of the record, on its own motion, award a *certiorari* to bring before it such omitted parts of the record; but, as a general rule, it will not do

so when the omission is caused by the failure or neglect of the appellant to accompany his petition for an appeal with a transcript sufficiently full to show affirmatively the facts which present the grounds of error on which he relies in his petition. In these causes, however, it does not distinctly appear that the appellants' position could be aided by a *certiorari;* but if it could, it is their fault that the transcript fails to furnish grounds on which to predicate this assignment of error, and the same must therefore be overruled.

3. The third assignment assumes that there was no lien on the Jackson mill property for the debt decreed to the plaintiffs. A brief reference to the fact will show that this assumption is wholly gratuitous. At the time William W. Jackson died, he was the absolute owner of the property subject to the two trust deeds to secure debts to Jacob J. Jackson. Under the will of William W. Jackson, his executor sold the property to Jacob J. Jackson. By this sale said trust deeds were satisfied, because the debts secured by them were applied as a part of the purchase-money for the property. This left the legal title in the estate of William W. Jackson, and it never has passed from it by any conveyance whatever. After the satisfaction of the trust-debts Bennett had no power or authority as trustee to sell or convey the property, and it does not appear that he attempted to do so. The deed by him to Ridgeway is made as executor of Jacob J. Jackson, and not as trustee. It is plain, therefore, that this deed did not divest the title of William W. Jackson, but left the title in him or his executor, and neither Jacob J. Jackson, his executor or vendee, could demand or compel a conveyance of the legal title until the unpaid balance of the purchase-money due to the estate of William W. Jackson was fully paid. This the decree shows was never done, and it was therefore not error for the court to declare that the lien existed in favor of the estate of William W. Jackson for the unpaid purchase-money.

4. If the proposition contained in the fourth and last assignment of the appellants was admitted to be law, the record does not show that the appellants, or either of them, were injured or prejudiced by the decree on account of it. An appellant cannot complain of error, unless he can also show

that he has been prejudiced by it. *Miller* v. *Rose*, 21 W. Va. 291. The record does not disclose that there were any preferred creditors of the estate of William W. Jackson, or that there were any debts of any kind other than the one due to the estate of George R. Jackson, the former executor of said estate. There is nothing, therefore, to show that there was any error or impropriety in decreeing payment to the estate of George R. Jackson for advances made by him while executor of said William W. Jackson, in the manner it was done in these causes.

In the answers of the appellant, Bennett, much reliance seemed to have been placed upon the laches of the plaintiffs and the statute of limitations as a bar to relief in these suits. But these defences have not been insisted upon in this Court. They were very properly abandoned, as a mere reference to the facts will show that the statute of limitations had no application to any matter adjudicated by the decree complained of, and there was no laches of which the appellants can complain. *Yancey* v. *Mauck*, 15 Gratt. 300. The debt decreed to the plaintiffs was a balance due on the purchase of real estate to secure which the title was retained by the vendor, and the suit to enforce this lien, or compel the payment of this debt, was brought within less than a year after the purchase was made. If there was any unreasonable delay in the prosecution of the suit, the appellants made no effort, as they could have done, to expedite it. They seem to have acquiesced in the delay very complacently, if not cheerfully. They have certainly put nothing upon the record which gives them any right to complain that they have not sooner paid the debt due to the plaintiffs. Upon the whole record, I can discover no error to the prejudice of the appellants. The appellees contend that the court erred to their prejudice by allowing the estate of William W. Jackson credit for the $1,000 secured in the trust deed of 1847 to Jacob J. Jackson. They claim that this debt was merged in and formed a part of the debt secured in the trust deed of 1856. I have carefully examined the evidence relating to this matter, and think it sufficient to warrant the finding of the Circuit Court; at least, the evidence in favor of the position of the appellees is not sufficient to justify this Court in reversing the finding

of the Circuit Court. The question is purely one of facts; and in such cases this Court will not reverse unless the finding is plainly erroneous. *Smith* v. *Yoke*, 27 W. Va. 636; *Doonan* v. *Glynn*, 28 W. Va. 715. The decree must consequently be affirmed.

AFFIRMED.