## CHARLESTON.

### REGER v. O'NEAL.

*(GREEN, JUDGE, absent.)

Submitted September 10, 1889—Decided November 9, 1889.

1. USURY.
   Where usurious interest has been paid upon a debt, and the debt, or any part of it, is unpaid, a court of equity, in stating the account between the parties, will credit upon the principal of what is unpaid whatever usurious interest has been paid, as of the date of its payment.

2. USURY.
   A note for the payment of a sum of money given *bona fide* for purchase-money for land, and not as a cover for a loan or forbearance of money, though it call for interest on that sum in excess of the rate allowed by law for the loan or forbearance of money, is not usurious. What is thus called "interest" is as much a part of the purchase-price of the land as the principal sum, and the rate of interest so called for will be enforced.

3. COMMISSIONERS OF COURT,
   Where questions purely of fact are referred to a commissioner,

*On account of illness.

his finding will be given great weight, though not as conclusive as the verdict of a jury, and should be sustained, unless plainly not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court, when the findings of a commissioner have been approved by the court below.

4. REVERSAL OF DECREE—EVIDENCE.

Where the decree sought to be reversed is based on depositions which are conflicting, and of such doubtful and unsatisfactory character that different judges might reasonably disagree as to the facts proved thereby, or the proper conclusions to be deduced therefrom, the appellate court will decline to reverse the finding or decree of the chancellor, although the testimony may be such that the appellate court might have pronounced a different decree, if it had acted on the cause in the first instance.

*Dayton & Dayton*, for appellant.

*S. V. Woods* for appellee.

BRANNON, JUDGE:

Anthony Reger brought a chancery suit in the Circuit Court of Barbour county against Lemuel O'Neal and others to enforce a lien reserved upon a tract of land in that county for the payment of several notes executed by O'Neal to Reger, admitting that all said notes had been paid, except one for $1,000.00 which he alleged to be wholly unpaid. The defendant O'Neal demurred to the bill, and his demurrer was overruled. He filed an answer alleging that one of said notes for $2,000.00 carried interest at seven *per cent.* from date, and that he had paid that interest, which he branded as usurious; and that on other notes after their maturity he had paid interest at the rate of eight *per cent.* per annum until the 1st of October, 1877; and that after that date, under an agreement with Reger, he had paid but six *per cent.;* and that he had paid all such interest annually; and that, if given credit for the usury paid, not only the other notes, but also that in suit, would be fully paid, and $53.75 in excess; and he demanded that such usury be applied to discharge that note, and, by way of affirmative relief, asked that the said excess of payment be decreed to him on the final hearing.

Afterwards, O'Neal filed a further answer, alleging that a gross mistake existed in the cause, in the fact that at

the house of Joseph Baker he had paid Reger $535.00 on the note for $2.000.00 and took his receipt therefor, which he had lost, and paid other moneys on that note, in all $1,535.00 up to the 27th September, 1873; and that on the 27th of February, 1878, he and Reger entered into an agreement in which it was erroneously assumed that the sum of $1,000.00 was still due upon said note for $2,000.00, when in truth there only remained then due thereon, $465.00; and that, notwithstanding there was only that sum due on that note, he paid eight *per cent.* on said $1.000 until October 1, 1877, and thereafter six *per cent.*, until payment of that note, in 1878 or 1879, and thus paid usurious interest on this $535.00 which he did not owe; that for eight or ten years he had paid all interest, legal and usurious, promptly each year; and he prays that this further answer be treated as a cross-bill, and for affirmative relief.

The plaintiff filed a reply in writing to both these answers, denying that O'Neal had paid the money as claimed in his answers, and denying that he had by usury overpaid $53.75, and denying that there had been any mistake or miscalculation, and alleging that O'Neal had received credit for every dollar he had ever paid, whether at the residence of Joseph Baker or elsewhere; that the $2,000.00 note bore seven *per cent.* as part of the purchase price for land as shown by the deed. This reply further alleged that on 27th of February, 1878, by an agreement with O'Neal, he bound himself to extend the time of payment of said several notes, and that in consideration of such extension and $35.00 paid O'Neal he had agreed to waive and release all claim for usury paid.

The cause was referred to a commissioner, to audit the account between the parties, to report what usury, if any, had been paid, and what was due on the purchase-money note filed with the bill. Numerous depositions were taken by the commissioner. The commissioner's report rejected the alleged credit of $535.00, but did not decide as to the usury claimed by O'Neal, but submitted that matter to the court upon a report presenting it in five aspects, viz: (1) On the basis that O'Neal was entitled to credit for usury to 1st of October, 1877; (2) on the basis that he was entitled to credit for usury to 1st of October, 1876; (3) on the basis

that he was not entitled to credit for usury paid on the $2,000.00 note till its maturity, and was entitled to the usury after maturity until 1st October, 1877; (4) On the same basis as third, except that it stopped usury 1st October, 1876; (5) on the basis that there was no usury to be allowed, as it was released by the agreement, 27th February, 1878. The plaintiff excepted to the report because he was charged with usury. The defendant excepted because the report did not allow him credit for the usury at the dates when paid, and because it ignored the $535.00 payment, and because of the aspects disallowing the usury. The Court adopted the first aspect of the report, finding a balance due from O'Neal, after crediting him with usury paid, of $164.13, and decreed that sum against O'Neal, and subjected the land to sale for it, thus disallowing credit for the $535.00. Thereupon O'Neal obtained this appeal.

As to the demurrer to the bill, no ground for it has been assigned, either in this or the Circuit Court, and no ground is now seen for sustaining it. An important question in the cause is, should this Court reverse the decree below for not allowing O'Neal credit for $535.00, which he claims to have paid on the note for $2,000.00 at Baker's residence? The evidence bearing upon this question is conflicting and uncertain, and it would serve no purpose to detail it at large. The receipt which, it is alleged, was given for it has been lost, though O'Neal presents other receipts and papers, and does not explain definitely how this was lost. Both O'Neal and Reger say that money was paid Reger at Baker's; but O'Neal says that it was on the $2,000.00 note, while Reger says it was paid on stock.

It may be true that such payment was made and applicable on that note, and it may be also true that O'Neal received credit for it in the many payments and transactions as to this debt from time to time during eight or ten years. Their business was transacted in an irregular way, neither being competent to draw papers or make entries or calculations, having to call on others to do this work. Reger states positively that O'Neal received credit for every dollar he ever paid, while O'Neal, after stating that he paid $530.00 or $535.00, on being asked if he had not received credit for it,

replied: "I can not say whether I have or not. I have no recollection of the note being present at the time." When asked if he meant to say that he had never received credit for the money paid at Baker's, he answered: "I don't believe I did. I don't know, because I can't remember." It is not certain when this payment was made. In his answer O'Neal says it was "soon after the payment" of $665.00, the receipt for which was dated 1st of October, 1872, and in his deposition he says he paid it about the time the $2,000.00 note fell due, (1st October, 1872) or a day or two before the date of said receipt. After this payment, on the 28th day of February, 1878, Reger and O'Neal executed a writing under seal whereby Reger agreed to let O'Neal have the use of the money O'Neal owed him, (Reger) "four land notes to be paid as follows: The first note of two thousand dollars, subject to a credit of one thousand dollars, to be paid on or before the first day of October, 1878," and proceeding and fixing later dates for payment of three other notes.

Thus, this agreement recognized that at its date the note was subject to a credit of $1,000.00, whereas, if it was subject to a credit of $535.00, this would be untrue, or at that date it had, besides several indorsements of interest paid to 1st October, 1877, indorsements of $665.00, $331.00, and $4.00, making up the $1,000.00 credit. It seems strange that O'Neal should have signed an agreement recognizing the note as subject to a credit of only $1,000.00, instead of $1,535.00. But here stands this written instrument, containing this admission, inconsistent with the idea that he was entitled to this large credit.

In a fourth deposition of O'Neal. he states that he claimed that three receipts should be credited on the $2,000.00 when he signed this article; but, being told by Reger that if he did not sign it he would sue him, he signed it. Three receipts might include this one for the $535.00, or for interest for 1874, which is not credited on the bond. O'Neal does not specifically state that he claimed that the receipt for this $535.00 was not credited. Now, this written agreement had been referred to and made an exhibit in the answer of O'Neal, filed 2d March, 1887, yet, though he gave three depositions

after its filing, he never, until this fourth deposition, in September, 1887, alleged any compulsion in the execution of this instrument. He thus knew of this payment, and, if he refers to it in his fourth deposition, claimed it to have been made in February, 1878, and yet in his first answer he never mentions it, or hints at its being a credit to him, claiming only that the usury which he had paid, and an undisputed payment of $630.00 on the note of $1,000.00 sued on, would overpay it; and several months later files a further answer, claiming the omission of this $535.00 credit as a glaring mistake. It strikes one as somewhat difficult to explain, that, with full knowledge of the facts, he failed to claim a credit for this $535,00. It seems strange, too, that in 1879 O'Neal paid off this $2,000.00 note by the payment of $1,000.00 balance of its principal and $60.00 interest, without insisting on this credit which, he says was specifically paid on that note. There is a statement in the record containing items of interest debited to O'Neal on one basis and items debited on another basis, and from one of the footings is a credit subtracted, in the language, "Amount paid, $520.00;" and it is claimed that this statement thus admits this $535.00. It appears that Reger himself made no calculations, and was not able to do so, but procured others to do the writing and calculating. He says he knows nothing of this statement, but a witness says, when he went, at O'Neal's instance, to inspect the papers in Reger's hands, this paper was among them, and delivered to him by Reger. But this sum of $520.00 is different from $535.00. When it was paid, whether at one time, or at different times, and set down as a lump sum, does not appear. It is unconvincing and inconclusive.

In addition to the facts which have been adverted to, there is considerable oral evidence on both sides bearing on this matter, more or less conflicting, inconclusive, and uncertain. Upon it all the commissioner found against this credit of $535.00, and the Circuit Court approved his finding.

We must in this cause apply the rule laid down by this Court on several occasions. "The question is purely one of fact, and in such cases this Court will not reverse, unless the

finding is plainly erroneous," is the language of Judge
SNYDER in delivering the opinion in *Fisher* v. *McNulty*, 30
W. Va. 195 (3 S. E. Rep. 593.) In *Smith* v. *Yoke*, 27 W. Va.
642, Judge SNYDER, in delivering the opinion, says: "This
Court has frequently decided that when questions of fact are
referred to a commissioner the findings of the commissioner
will be sustained, unless it plainly appears that they are not
warranted by any reasonable view of the testimony. And
this rule operates with peculiar force in an appellate
court, where the findings of the commissioner have been
approved and sustained by the chancellor. *Handy* v. *Scott*,
26 W. Va. 710; *Boyd* v. *Gunnison*, 14 W. Va. 1; *Graham* v.
*Graham*, 21 W. Va. 698." "Where the decree sought to be
reversed is based upon depositions which are so conflicting
and of such a doubtful and unsatisfactory character that
different minds and different judges might reasonably dis-
agree as to the facts proved by them, or the proper conclu-
sion to be deduced therefrom, the appellate court will decline
to reverse the finding or decree of the chancellor, although
the testimony may be such that the appellate court might
have pronounced a different decree, if it had acted upon the
cause in the first instance." *Smith* v. *Yoek* 27 W. Va. 639;
*Prichard* v. *Evans*, 31 W. Va. 137 (5 S. E. Rep. 461); *Doonan*
v. *Glynn*, 28 W. Va. 715. Thus, there is no error in dis-
allowing said credit of $535.00.

As to the usury. Usury was undoubtedly paid each year
to Reger from maturity of the several notes, except one, to
October 1, 1877. It is well settled that as long as the debt is
unpaid the debtor can, if he see proper, have it applied as a
payment on the debt. *Norvell* v. *Hedrick*, 21 W. Va. 523;
*Spengler* v. *Snapp*, 5 Leigh, 478; *Fox* v. *Taliaferro*, 4 Munf.
243; *Turner* v. *Turner*, 80 Va. 379; Tyler, Usury, 448. As
said by SHARSWOOD, J., in *Campbell* v. *Sloan*, 62 Pa. St. 481:
"These payments, as payments of interest, were avoided by
the statute, and became payments on account of the princi-
pal." And in *Farwell* v. *Meyer*, 35 Ill. 40, it is held that the
usury received is considered as so much extorted by means
of the debt, and is to be applied in part payment of the
same. See *Musselman* v. *McElhenny*, 23 Ind. 4; *Lockwood*
v. *Mitchell*, 7 Ohio St. 387; note to *Zeigler* v. *Scott*, 54 Amer.

Dec. 402; *Treadgill* v. *Timberlake*, 2 Head, 395; *Smith* v. *Young*, 11 Bush, 393; *Crutcher* v. *Trabue*, 5 Dana, 80; *Ellis* v. *Brannin*, 1 Duv. 48; *Booker* v. *Gregory*, 7 B. Mon. 439; *Wood* v. *Gray*, 5 B. Mon. 93. But these principles do not apply to debts due national banks, for reasons appearing in *Bank* v. *Boylen*, 26 W. Va. 554. And the Circuit Court did allow O'Neal the usury paid, as against the note in suit. But the appellant complains that interest has been given on the usury annually paid, not from the times when paid, but only from 1st October, 1877. I think, with O'Neal's counsel, that the payments should be applied when paid, and operate to stop interest on the principal from that date. *Booker* v. *Gregory*, *ubi supra*.

Under the process adopted by the commissioner, he should have credited O'Neal with interest on usury paid from the time when paid. Correcting this error, by my calculation, O'Neal is aggreived $49.65. But in his statement, which is the basis of the decree, the commissioner charged Reger $20.05 for one *per cent.* usury on the $2,000.00 note from its date to maturity, and with $100.00 for two *per cent.* usury after its maturity to 1st October, 1877, but should have charged only $50.00, as one *per cent.* usury. This $2,000.00 note was, with the percentage of interest it called for, purchase-money for the land. Usury is interest exceeding the lawful rate for the loan or forbearance of money, and does not exist where such interest is essentially and honestly a part of the consideration in the purchase of land, even though it be called for in the form of a percentage on a principal sum, and be called "interest," and be in excess of the lawful rate; the interest, in such case of an honest purchase, where it is not a mere cover for what is in fact a loan, being as much a part of the purchase price as that part appearing as the principal. *Tousey* v. *Robinson*, 1 Metc. (Ky.) 663; *Graeme* v. *Adams*, 23 Gratt. 225; *Kraker* v. *Shields*, 20 Gratt. (in opinion on page 398;) 5 Rob Pr. 467.

In the king's bench, in *Beete* v. *Bidgood*, 7 Barn. & C. 453, Lord TENTERDEN said the only difficulty arose from calling it "interest;" but the court, looking at the substance, and regarding the interest as a part of the purchase consideration, held it not usurious.

In the New York court of appeals, in *Cutler* v. *Wright*, 22 N. Y. 472, this case of *Beete* v. *Bidgood* was said to be unquestionably law; and the supreme court of the United States has recognized it in *Hansbrough* v. *Peck*, 5 Wall. 507. In said New York case the syllabus is: "It seems that the mere fact that on a contract for the sale of land a higher than the legal rate of interest is reserved upon the deferred payments does not render the transaction usurious."

Therefore, it was error to charge Reger with said sums of $20.05 and $50.00, with interest from 1st October, 1877. This error against him, by my calculation, amounts to $78.45; and, substracting the $49.65 in favor of O'Neal, there remains a balance in favor of Reger of $28.80, which being added to $164.13, the amount decreed to Reger, makes $192.93 as the proper sum due him at the date of the decree. Therefore the said decree is corrected so as to require the payment by O'Neal to Reger of $192.93, with interest from the 2d day of January, 1888, instead of $164.13; and, being so corrected, the said decree is affirmed, with costs and damages to appellee.

Reger's counsel insists that the consideration for which he agreed by the article of 27th February, 1878, to extend indulgence to his debtor, and paid him $35.00, was that O'Neal should waive all claim to usury. This may be so, but his evidence is contradicted by O'Neal's, and the writing is silent as to any such waiver or release of usury, and the commissioner and court, as I think properly, found against such release. The writing is the repository of the transaction, and we can not make it speak or operate as a release on mere oral evidence of a contemporaneous understanding, even if it would bar O'Neal from claiming usury if it contained such waiver, on which we indicate no opinion. Decree corrected and affirmed.

AFFIRMED.