J. C. Fanning, *Admr. v.* Minnie Dennis *et al.*

(No. 8613)

Submitted January 25, 1938. Decided February 22, 1938.

*Martin & Martin* and *Clark M. Thornton,* for appellant.
*J. H. Gadd,* for appellees.

Maxwell, President:

This suit is for the benefit of the creditors of C. W. Dennis, deceased. Its immediate purpose is to subject to sale certain real estate of which it is alleged that the decedent was the owner. His widow, Minnie Dennis, in defense of the suit, asserts that the specified realty in

fact belongs to her and is therefore not liable for the debts of her husband. She prays first that the title in fee be vested in her and the children, free of debt. In the alternative, she prays that, if her primary position cannot be sustained, she be decreed to have a preferential charge against the property to the extent of payments made by her on the purchase price and for improvements. From a decree refusing relief to her and directing sale of the property, she appeals.

In 1922, while C. W. Dennis and his wife, Minnie, were living together in the City of Princeton, in Mercer County, he entered into a contract with the Lilly Land Company for the purchase of a small parcel of land with dwelling house thereon for the sum of $1250.00. Thereafter for about ten years the parties continued their marital relations. In August, 1932, he left his family and home—seemingly abandoned them, and was killed in a mine accident in March, 1933.

At the time the decedent went away from his home, all installment payments on the property had been made except a small balance of $16.50. Receipts for periodical payments were issued by the Land Company to the credit of C. W. Dennis, though representatives of the company admit that many of the payments were made at its office by Minnie Dennis. It is contended by Minnie that, excepting $250.00 initially paid by C. W. Dennis on the purchase of the property, she paid all of the installments with her own money; that she earned the money by keeping boarders, and, through a period when she had no boarders, by clerking in a store.

After the small balance of purchase money had been paid to the Land Company out of funds derived from rental of the property, subsequent to the death of C. W. Dennis, Minnie Dennis requested the company to make a deed for the property. It was her thought that absolute title should be conveyed by deed to her. She testified, however, that not being familiar with legal matters, she accepted without protest the deed which the Land Company executed and delivered to her. By that deed, title was conveyed to her and her two minor sons,

jointly, the deed reciting that "said Minnie Dennis shall hold her dower interest in said property as if the same had been conveyed to the said C. W. Dennis in his lifetime."

The record justifies the belief that Minnie Dennis was an industrious, hard-working housewife who, through her energy, earned money which she paid on the purchase of the property. But, other than her own testimony that all payments were made from her funds, subsequent to the original $250.00 paid by her husband, there is no possible basis in the record for determining the extent of payments made from her money. And then, too, it must be noted that while she was earning money through keeping boarders in the home, her husband, who was gainfully employed, paid the grocery bills. Thus, both husband and wife were contributing to their mutual well-being and advantage. It was their joint efforts and not hers solely which made it possible to meet the payments on the purchase of the property.

Lilly Land Company's deed, granting the property to C. W. Dennis' two sons and his widow (a dower interest to the latter), was in compliance with its contract. The company could not properly have made a different grant. Nothing had transpired to warrant deviation by it from the letter of the contract. The evidence discloses no ground nor justification for the prayer of Minnie Dennis that the property be decreed to belong to her and her two sons, free from the debts of her deceased husband.

Her alternative prayer, stated above, cannot be effectuated because of insufficiency of background for decree. By reason of the mutuality of their contributions to the financing of family affairs, the extent of a constructive trust, if any, for her benefit, would be entirely nebulous.

Dealings between husband and wife which would operate to the disadvantage of creditors of either of them must be subjected to exacting scrutiny, and cannot be upheld unless free from doubt and suspicion. Sustaining proof must be full and clear. *Miller* v. *Gillispie,* 54 W.

Va. 450, 460, 46 S. E. 451. There has not here been compliance with that fundamental and just requirement.

As a preliminary to the entry of the decree under review, the chancellor sustained exceptions to a commissioner in chancery's finding that Minnie Dennis was entitled to the primary relief for which she prayed. On this appeal, she draws in question this action of the chancellor and insists that the commissioner's conclusion, being in large measure grounded on a factual issue, should not have been disturbed by the court.

Frequently, as here, there is challenge of a trial court's right to overrule a commissioner's finding of fact. In considering such matters, it should first be noted that commissioners' findings often, in the very nature of things, are based on mixed questions of law and fact. In such instances, beyond question, the chancellor's authority is paramount. But even where there is involved what may be denominated a pure question of fact, there reposes in the chancellor the right to disapprove a commissioner's finding, if, in the chancellor's opinion, the ascertainment is not consistent with the weight of the evidence. If this were not true, the action of an arm, agency or instrumentality of the court would predominate over the court's conviction. Such incongruity is not the law. It is a commissioner's function to assist the court and not to supplant it.

Of course, where no reasonable view of the evidence sustains a commissioner's finding, it should be set aside. *Thomas* v. *Collins,* 93 W. Va. 678, 117 S. E. 489; *Highland* v. *Ice,* 75 W. Va. 513, 84 S. E. 252. But the chancellor is not limited to this narrow basis in reviewing commissioners' determinations. If the chancellor and the commissioner differ respecting the weight of the evidence and the conclusion to be reached, the former, and not the latter, should control the situation. The condition is not closely comparable to a jury verdict in which the trial judge would not have concurred had he been a member of the jury. In such circumstances, merely because his view may differ from the jury's, the judge should not disturb a verdict. But a commissioner's find-

ing does not carry the force of a verdict. *State* v. *King,* 64 W. Va. 546, Syl. 7, 63 S. E. 468; *Holt* v. *Taylor,* 43 W. Va. 153, 27 S. E. 320; *Stewart* v. *Stewart,* 40 W. Va. 65, 20 S. E. 862; *Fry* v. *Feamster,* 36 W. Va. 454, 15 S. E. 253; *Reger* v. *O'Neal,* 33 W. Va. 159, 10 S. E. 375. The findings of fact of a commissioner will not be sustained if the court is "satisfied from the evidence before the commissioner, that such findings are erroneous." *Boyd* v. *Gunnison,* 14 W. Va. 1, Syl. 7. The ascertainments of fact by a commissioner are entitled to great weight, and are not to be inconsiderately departed from, but, in large measure, they are advisory to the chancellor and, on exceptions to the commissioner's report, do not circumscribe the chancellor's right to make his own findings from the evidence.

For the reasons set forth, we affirm the decree.

*Affirmed.*